JACK KUSHNER AND ANNETTA H. KUSHNER, Petitioners v COMMISSIONER OF INTERNAL REVENUE, Respondent
Kushner v. Commissioner
Docket No. 21488-88
United States Tax Court
T.C. Memo 1991-26; 1991 Tax Ct. Memo LEXIS 20; 61 T.C.M. (CCH) 1716; T.C.M. (RIA) 91026; January 23, 1991, Filed *20 Decision will be entered under Rule 155.
Ps created a trust naming their children as beneficiaries. Ps funded the trust by making demand loans to the trust from the proceeds of loans Ps had obtained from a commercial bank. To ensure repayment of the loan extended to the trust, Ps were given a security interest in the trust's Eurodollar deposit account. To ensure repayment of the loan extended to Ps, the lending bank was provided a security interest in Ps' secured demand note. Held, Ps are owners of the trust pursuant to the grantor trust provisions of I.R.C. sections 671 through 679. Held further, Ps are liable for additions to tax prescribed by I.R.C. section 6661(a). Anne W. Mitchell, for the petitioners. John F. Driscoll, for the respondent. NIMS, Chief Judge. NIMS
MEMORANDUM OPINION Respondent determined deficiencies in, additions and increased interest to petitioners' Federal income taxes as follows: Year
Deficiency
Section 6659
Section 6661
Section 6621(c)
1982
$ 8,111
$ 1,834
$ 1,956
* 1983
7,842
--  2,441
--
*21 (Unless otherwise indicated, section references are to the Internal Revenue Code as amended and in effect for the years at issue. Rule references are to the Tax Court Rules of Practice and Procedure.) After concessions and by stipulation, the issues for decision are: (1) whether petitioner Jack Kushner is the owner of the Jack Kushner Children's Trust pursuant to the grantor trust provisions contained in sections 671 through 679; and if so, (2) whether petitioners are liable for the additions to tax provided in section 6661. The parties submitted this case fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners, husband and wife, resided in Annapolis, Maryland, at the time they filed their petition in this case. Petitioners filed joint Federal income tax returns for 1982 and 1983. On September 28, 1981, the Jack Kushner Children's Trust (trust) was established pursuant to a written trust agreement executed by Jack Kushner (hereinafter petitioner) as grantor and Harold Kushner as trustee. On or about September 28, 1981, petitioner delivered a check in the amount of $ 100 to the trustee representing the initial *22 corpus of the trust. The check was promptly deposited by the trustee in a bank account opened in the name of the trust at City National Bank of Birmingham. On October 27, 1981, in anticipation of a loan from petitioner, the trustee executed an interest-free promissory demand note in favor of petitioner in the amount of $ 100,000. Payment of the note was secured by an assignment to petitioner of a security interest in a Eurodollar deposit account to be purchased on behalf of the trust from the First National Bank of Maryland (First National) in the face amount of $ 100,000. On or about October 29, 1981, petitioner borrowed $ 100,000 from First National and executed a demand note at an annual percentage rate of 18 percent in favor of the bank. Payment of the note was secured by an assignment of a security interest to the bank in the $ 100,000 demand note petitioner previously received from the trust. The trustee directed First National to transfer interest earned on the Eurodollar deposit account to a second account of the trust maintained at the same bank. On or about October 29, 1982, the trust repaid the original demand note of $ 100,000 to petitioner. At the same time, petitioner *23 repaid his loan of $ 100,000 to First National. On October 29, 1982, the trust borrowed $ 150,000 from petitioner and executed a second demand note in favor of petitioner substantially similar to the 1981 demand note. Again, the proceeds of the loan were invested on behalf of the trust in a Eurodollar deposit account. As before, petitioner borrowed the amount loaned to the trust from First National and granted First National a security interest in the demand note he had received from the trust. On November 12, 1982, the trust used the interest earned on its deposits to purchase a certificate of deposit in the amount of $ 16,222.22. On or about October 28, 1983, the trust repaid the $ 150,000 demand note to petitioner. At the same time, petitioner repaid his loan of $ 150,000 to First National. On October 29, 1983, the trust borrowed $ 166,000 from petitioner and executed a third demand note in favor of petitioner substantially similar to the first two demand notes. Again, the proceeds of the loan were invested on behalf of the trust in a Eurodollar deposit account. Consistent with the prior transactions, petitioner borrowed the amount loaned to the trust from First National *24 and granted First National a security interest in the demand note he had received from the trust. The trust earned interest income of $ 16,222 in 1982 and $ 16,056 in 1983. The trust made distributions to its beneficiaries of $ 9,000 in 1982 and $ 15,612 in 1983. On September 6, 1984, the trustee wrote to First National and requested that the trust's Eurodollar deposit account be sold. The trustee further requested that $ 166,000 from the account be transferred to petitioner as repayment of the loan extended to the trust in October, 1983, and that the accrued interest on the account be forwarded to the trustee. After completion of the foregoing transactions, the trust had remaining assets of approximately $ 14,765. These funds were distributed to the beneficiaries' mother as their custodian and the trust was terminated. In his notice of deficiency, respondent determined that the Jack Kushner Children's Trust was a grantor trust and that petitioner, as owner, failed to report the income earned by the trust in the amounts of $ 16,222 and $ 16,056 for taxable years 1982 and 1983. Petitioner timely filed a petition for redetermination. Petitioner asserts that he made valid loans *25 to the trust during 1982 and 1983 and that he merely retained the rights any creditor would maintain with respect to an outstanding loan. Petitioner concludes that he should not be treated as the owner of the trust and that the income in question was properly reported on the fiduciary returns filed on behalf of the trust. Respondent contends that by funding the trust through loans secured by demand notes from the trust, petitioner retained control over the trust's continued existence. In this regard, respondent emphasizes that petitioner could have demanded repayment of his loans at anytime, thereby immediately terminating the trust beneficiaries' beneficial enjoyment of the trust corpus and resulting in a return of the trust corpus to himself. Respondent claims that as a consequence of petitioner's decision to fund the trust through loans secured by demand notes, petitioner retained: (1) a reversionary interest in the trust pursuant to section 673(a); (2) a power to control the beneficial enjoyment of the trust corpus pursuant to section 674(a); and (3) a power to revoke the trust and revest the corpus of the trust in himself pursuant to section 676(a). Respondent concludes *26 that under any one, or all, of the three theories, the trust was a grantor trust. Trust Income
The first issue for decision is whether petitioner should be treated as the owner of the trust pursuant to the grantor trust provisions contained in sections 671 through 679. Section 671 provides that if a grantor is treated as the owner of any portion of a trust, all of the income, deductions, and credits attributable to that portion are included in his income. Sections 673 through 677 define the circumstances under which the income of a trust will be taxed to a grantor. Section 674(a) provides: (a) GENERAL RULE. -- The grantor shall be treated as the owner of any portion of a trust in respect of which the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition, exercisable by the grantor or a nonadverse party, or both, without the approval or consent of any adverse party.
In sum, a grantor will be treated as the owner of any portion of a trust of which the grantor or a nonadverse party (defined in section 672(b)) possesses an independent power of disposition over the beneficial enjoyment of the corpus or income. In the *27 case before us, petitioner, grantor of the Jack Kushner Children's Trust, had the absolute authority to demand that the trust repay his loans at anytime. Other than the initial provision of $ 100, the loans that petitioner extended to the trust represented the only principal or corpus of the trust. From this perspective, it is seen that petitioner's ability to demand payment of the loans enabled him to maintain direct dominion and control over the beneficial enjoyment of the trust's corpus. Thus, petitioner is to be treated as owner of the trust to the extent of the amounts which he loaned to the trust. See Batson v. Commissioner, T.C. Memo 1983-545, affd. without published opinion 758 F.2d 652 (6th Cir. 1985); Wysong v. Commissioner, T.C. Memo 1988-344. In an effort to avoid the adverse tax consequences associated with the grantor trust provisions, petitioner cites Lafargue v. Commissioner, 689 F.2d 845 (9th Cir. 1982), revg. in part, affg. in part and remanding 73 T.C. 40 (1979), for the proposition that a grantor may be a creditor as well as a grantor of a trust and thus avoid being treated as the owner of the trust. Petitioner argues that as a creditor of the *28 trust he is not subject to the grantor trust provisions. In LaFarque v. Commissioner, supra, the Commissioner determined that the taxpayer/grantor should be treated as the owner of the trust pursuant to section 677(a) because the trust income was being distributed to the taxpayer. In modifying this Court's decision in favor of the Commissioner, the Ninth Circuit ruled that the taxpayer's characterization of the transaction as a sale in exchange for an annuity would not be disregarded for tax purposes where the annuity payments were not calculated to approximate the transferred property's annual income and the taxpayer did not control the trust. The appellate court agreed with the taxpayer that she was a creditor of the trust. LaFarque v. Commissioner, 689 F.2d at 846-847. We do not find that LaFarque lends support to petitioner's position in this case. Specifically, in LaFarque the Commissioner sought to alter the taxpayer's characterization of the transaction by applying section 677(a) which provides that a grantor may be treated as an owner of a trust if the trust income may be accumulated or distributed to the grantor. In contrast, we are concerned with the *29 entirely different issue of whether petitioner/grantor has retained a power of disposition over the corpus of the trust under section 674(a). Further, while the appellate court in LaFarque emphasized that the taxpayer lacked the power to control the trust, we have concluded just the opposite in the present case. Accordingly, we regard the issue of whether petitioner may be classified in some technical sense as a creditor of the trust as irrelevant to the question of whether petitioner must be treated as the owner of the trust under section 674(a). The fact remains that petitioner maintained absolute dominion over the continued enjoyment of the corpus of the trust by virtue of his power to demand repayment of his loans at will. Finally, we reject petitioner's contention that he should not be taxed on the income of the trust pursuant to the grantor trust provisions because he would not have been so taxed had he structured the transaction as a direct interest-free loan to his children. We confine our analysis of petitioner's tax liability to the specific facts presented, not to what petitioner might otherwise have done. Commissioner v. National Alfalfa Dehydrating & Milling *30 Co., 417 U.S. 134, 148-149, 40 L. Ed. 2d 717, 94 S. Ct. 2129 (1974). Having concluded that petitioner was the owner of the trust under section 674(a), we need not address respondent's alternative arguments with respect to sections 673(a) and 676(a). However, we must decide whether petitioner is liable for the additions to tax prescribed in section 6661. Additions to Tax
Section 6661(a) imposes an addition to tax when there is a "substantial understatement of income tax for any taxable year." As applicable here, the rate of the addition to tax under section 6661(a) is equal to 25 percent of the underpayment attributable to the substantial understatement. Pallottini v. Commissioner, 90 T.C. 498 (1988). Petitioner bears the burden of proving that the additions to tax under section 6661(a) determined in the notice of deficiency are not applicable. Rule 142(a). Section 6661(b)(2)(A) defines "understatement" to mean the excess of the amount of tax required to be shown on the return over the amount of tax actually reported on the return. This understatement will be "substantial" if the amount of such understatement exceeds the greater of 10 percent of the amount of tax required to be shown on the return *31 for the taxable year, or $ 5,000. Section 6661(b)(1)(A). The amount of the understatement is reduced by the portion of the understatement attributable to any nontax shelter item for which there was either substantial authority for the taxpayer's return position or adequate disclosure in the return or in a statement attached to the return of the relevant facts affecting such item's tax treatment. Section 6661(b)(2)(B). In the case of any item attributable to a tax shelter, however, the amount of the understatement shall only be reduced to the extent that the taxpayer shows that there was substantial authority for the particular treatment of the item and that the taxpayer reasonably believed that the tax treatment of such item was more likely than not the proper treatment. Section 6661(b)(2)(C). The substantial authority standard is less stringent than the more likely than not standard but stricter than a reasonable basis standard. Section 1.6661-3(a)(2), Income Tax Regs. A position with respect to the tax treatment of an item that is arguable but fairly unlikely to prevail in court would not satisfy the substantial authority standard. Section 1.6661-3(a)(2), Income Tax Regs.
*32 Respondent contends that petitioner used the trust as a tax shelter and that petitioner must therefore demonstrate that he reasonably believed that the tax treatment of the income of the trust was more likely than not the proper treatment. Notwithstanding whether the trust in question may be classified as a tax shelter, petitioner has failed to establish there was substantial authority for his tax treatment of the trust's income. Section 6661(b)(2)(B). Thus, we need not consider whether petitioner reasonably believed that his reporting position was more likely than not the proper treatment. As previously discussed, the case law and theories that petitioner relies upon to support his reporting position are not sufficiently analogous to the substantive issue presented in this case to rise to the level of substantial authority. In fact, consideration of the policies underlying the grantor trust provisions and a well-reasoned construction of section 674(a) render petitioner's support for his reporting position nugatory. Accordingly, we hold that petitioners are liable for the additions to tax under section 6661(a). To reflect the foregoing, Decision will be entered under Rule *33 155. Footnotes
*. 120 percent of the interest due on the underpayment.↩